UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA KAYE HOSNER, | No. 2:13-cv-1690-KJN |
| Plaintiff, | |
| v. | ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff Donna Kaye Hosner seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act").[1] In her motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from September 1, 2003, through the date of the final administrative decision. (ECF No. 15.) The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment. (ECF No. 16.) Thereafter, plaintiff filed a reply brief. (ECF No. 17.)

////

---

[1] This action was initially referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes. (ECF Nos. 7, 8.)

For the reasons that follow, the court denies plaintiff's motion for summary judgment, grants the Commissioner's cross-motion for summary judgment, and enters judgment for the Commissioner.

I.     BACKGROUND

Plaintiff was born on February 1, 1959; passed her tests for General Education Development ("GED"); and previously worked as a receptionist and caretaker.[2]  (Administrative Transcript ("AT") 33, 35-36, 151.)  On September 16, 2009, plaintiff applied for DIB and SSI, alleging that she was unable to work as of September 1, 2003, due to a heart condition (later identified as coronary artery disease status post coronary artery bypass surgery), depression, hepatitis C, and chronic obstructive pulmonary disease ("COPD").  (AT 77, 146.)  On March 4, 2010, the Commissioner determined that plaintiff was not disabled.  (AT 87-88.)  Upon plaintiff's request for reconsideration, that determination was affirmed on August 11, 2010.  (AT 91-93.)  Thereafter, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on February 29, 2012, and at which plaintiff was represented by counsel.  (AT 31, 33.)

In a decision dated March 27, 2012, the ALJ determined that plaintiff had not been under a disability, as defined in the Act, from September 1, 2003, plaintiff's alleged disability onset date, through the date of the ALJ's decision.  (AT 7-25.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on June 17, 2013.  (AT 1-3.)  Thereafter, plaintiff filed this action in federal district court on August 15, 2013, to obtain judicial review of the Commissioner's final decision.  (ECF No. 1.)

II.    ISSUE PRESENTED

Plaintiff has raised the sole issue of whether the ALJ improperly discounted the opinion of the consultative examiner, Dr. Joseph Garfinkel; and in particular, his opinion regarding plaintiff's ability to stand and walk.

////

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the court does not exhaustively relate those facts in this order.  The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

2

III. <u>LEGAL STANDARD</u>

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  <u>Connett v. Barnhart</u>, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Orn v. Astrue</u>, 495 F.3d 625, 630 (9th Cir. 2007), quoting <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted).  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."  <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV. <u>DISCUSSION</u>

    A. <u>Summary of the ALJ's Findings</u>

The ALJ evaluated plaintiff's entitlement to DIB and SSI pursuant to the Commissioner's standard five-step analytical framework.[3]  As an initial matter, the ALJ found that plaintiff met

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program.  42 U.S.C. §§ 401 et seq.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. §§ 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his or her past relevant work?  If

1  the insured status requirements of the Act for purposes of DIB through June 30, 2006.  (AT 12.)
2  At the first step, the ALJ concluded that plaintiff had not engaged in substantial gainful activity
3  since September 1, 2003, plaintiff's alleged disability onset date.  (Id.)  At step two, the ALJ
4  determined that plaintiff had the following severe impairments: coronary artery disease status
5  post coronary artery bypass surgery, hypertension, hyperlipidemia, lumbar and cervical
6  degenerative disk disease, COPD, tobacco use disorder, hepatitis C, and arthritis.  (Id.)  However,
7  at step three, the ALJ determined that plaintiff did not have an impairment or combination of
8  impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part
9  404, Subpart P, Appendix 1.  (AT 16.)

Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a reduced range of light work as defined in 20 CFR 404.1567(b) and 416.967(b).  The claimant can lift, carry, push, and/or pull twenty pounds occasionally and ten pounds frequently.  The claimant can stand and/or walk for about six hours in an eight-hour workday.  She can sit for six hours in an eight-hour workday.  She can frequently climb ramps and stairs and frequently balance, stoop, kneel, crouch, or crawl.  She can occasionally climb ladders, ropes, or scaffolds.  She must avoid concentrated exposure to fumes, gases, odors, dusts, and poor ventilation.

(AT 17.)

At step four, the ALJ found, based on the Dictionary of Occupational Titles, that plaintiff was capable of performing past relevant work as a receptionist, which is light semiskilled work with a specific vocational preparation ("SVP") rating of 3, as it is generally performed.  (AT 24.)

---

so, the claimant is not disabled.  If not, proceed to step five.

Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

4

1 Accordingly, the ALJ concluded that plaintiff had not been under a disability, as defined in the
2 Act, from September 1, 2003, plaintiff's alleged disability onset date, through the date of the
3 ALJ's decision. (AT 25.)

        B.        <u>Plaintiff's Substantive Challenge to the Commissioner's Determinations</u>

On appeal, plaintiff's sole contention is that the ALJ improperly discounted the opinion of the consultative examiner, Dr. Joseph Garfinkel, particularly regarding plaintiff's ability to stand and walk.[4] For the reasons discussed below, the court ultimately finds that argument unpersuasive.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1201-02 (9th Cir. 2001); <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. <u>Holohan</u>, 246 F.3d at 1201-02; <u>Lester</u>, 81 F.3d at 830; <u>Smolen v. Chater</u>, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. <u>Lester</u>, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. <u>Id.</u> at 830. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. <u>Id.</u> at 831.

On February 23, 2010, consultative examiner Dr. Garfinkel examined plaintiff and reviewed plaintiff's prior medical records. (AT 670-80.) Upon physical examination, Dr.

---

[4] Even assuming, *arguendo*, that the ALJ improperly failed to adopt Dr. Garfinkel's other postural limitations (limiting plaintiff to less than occasional climbing, kneeling, or squatting) (AT 674), such error was harmless, because plaintiff's past relevant work as a receptionist plainly does not require more than minimal climbing, kneeling, or squatting, if any. Thus, the gist of plaintiff's argument concerns Dr. Garfinkel's assessment of standing/walking limitations.

1  Garfinkel observed that plaintiff had largely normal lung and cardiovascular exams; no
2  tenderness in her chest; no edema in her extremities; and a normal range of motion in her neck,
3  shoulders, elbows, wrists, hips, knees, and ankles.  (AT 672-73.)  Dr. Garfinkel noted that
4  plaintiff experienced pain during a straight leg raise test at 60 degrees on both the right and left;
5  had guarding and tenderness of the lumbar paraspinal muscles; had an antalgic gait; and was
6  unable to stand and walk on her heels and toes.  (AT 673-74.)  However, during a neurological
7  examination, Dr. Garfinkel found that plaintiff had good tone bilaterally with active motion;
8  strength of 5/5 in all extremities; intact sensation to light touch, pinprick, vibration, and position;
9  normal reflexes; an intact finger to nose exam; and intact cranial nerves.  (AT 673.)

   Dr. Garfinkel opined that plaintiff suffered from "[c]oronary artery disease, status post CABG in 2003," "[c]hronic back pain, most likely osteoarthritis," hypertension, and "[c]hronic shoulder and neck pain, most likely osteoarthritis."  (AT 674.)  Dr. Garfinkel concluded that plaintiff could lift 20 pounds occasionally and 10 pounds frequently; stand or walk for 2 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; and climb, kneel, or squat less than occasionally.  (Id.)  Dr. Garfinkel stated that plaintiff had no other manipulative, visual, communicative, or environmental limitations.  (Id.)

   The ALJ stated that he discounted Dr. Garfinkel's standing/walking limitation of 2 hours because it was "excessive given the limited clinical findings by Dr. Garfinkel."  (AT 22.) Plaintiff correctly points out that this conclusory statement, standing alone, does not amount to a specific and legitimate reason for discounting Dr. Garfinkel's opinion.  However, the court is required to review the ALJ's decision as a whole, and not merely isolated portions of that decision.  Furthermore, "[a]s a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion."  Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989).  In this case, after a global review of the ALJ's decision, the court concludes that the ALJ discussed several other specific and legitimate reasons for discounting Dr. Garfinkel's opinion.

   The ALJ relied in part on the opinion of the state agency physician, Dr. M. Acinas, and accorded it significant weight.  (AT 22.)  Dr. Acinas reviewed the medical evidence of record and

6

prepared a physical RFC assessment, in which she disagreed with Dr. Garfinkel, opining that plaintiff could stand or walk for 6 hours, rather than 2 hours, in an 8-hour workday. (AT 682.) Dr. Acinas stated that Dr. Garfinkel's standing/walking limitation was excessive because plaintiff's neuromotor examination was normal, plaintiff's deep tendon reflexes were normal, and plaintiff had no muscle atrophy. (AT 682, 685.) To be sure, "the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). However, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." Id.

Here, there is independent evidence in the record that supports Dr. Acinas' opinion. As the ALJ discussed, x-rays showed that plaintiff's degenerative disk disease was mild, and only oral medications were prescribed. (AT 23-24, 602, 653, 668-69.) The ALJ noted that the record indicated no "need for further treatment such as physical therapy, injection therapy, or surgery." (AT 23.) Indeed, plaintiff testified that she had not sought further evaluation by an orthopedic surgeon or neurosurgeon concerning her pain. (AT 56-58.) Conservative treatment can plausibly suggest a "lower level of both pain and functional limitation." Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995); Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (explaining that treatment notes reflecting that the claimant was "in no acute distress" and prescription of a conservative course of treatment are "not the sort of description and recommendations one would expect" to accompany a finding of total disability). Thus, the objective imaging studies and plaintiff's conservative treatment are consistent with Dr. Acinas' less restrictive standing/walking assessment.

In addition, the ALJ found that plaintiff's testimony regarding her impairments was not credible due to various inconsistencies. (AT 24.) For example, the ALJ recited plaintiff's statements that her back pain began in 2008, and that she could only sit or stand for between five and fifteen minutes at a time due to pain. (AT 18-19, 56, 670.) However, the ALJ pointed out that plaintiff told the clinical social worker at Tehama County Health Services Agency on August 26, 2011, that she liked to go shopping, go to yard sales, and walk and bike with her daughter.

7

(AT 15, 772.)  Plaintiff also stated that she wanted to "start a support group for 'all of us over 40 who sit around at home and do nothing, [and] are bored, depressed, [and] sleeping.'"  (AT 24, 772.)  Moreover, the ALJ noted that, despite plaintiff's testimony regarding her severe limitations, plaintiff informed the social worker that the reason she was not working was that she did not "feel like getting out there, and there[] [are] no jobs anyway."  (Id.)  In fact, plaintiff testified at the hearing that the reason she applied for benefits was because she "couldn't get a job and everybody kept telling [her] to go down and apply."  (AT 24, 50-51.)

The ALJ also discussed several inconsistent statements concerning plaintiff's alleged disability onset date.  While plaintiff testified that her disability began after her cardiac bypass surgery in September 2003,[5] the record shows that she has had no residual effects from that condition besides a change in hormone levels.  (AT 18, 24, 52-53, 717-22, 738.)  Furthermore, plaintiff told the psychiatric consultative examiner that she became unable to work in 2005, instead of 2003.  (AT 24, 606.)  The ALJ also pointed out that plaintiff did not apply for benefits until September 2009, roughly six years after her alleged disability onset date.  (AT 24, 77-78.)  Based on these inconsistencies, as well as others identified in the decision, the ALJ found that plaintiff's claimed severity of her impairments was excessive, further supporting Dr. Acinas' less restrictive standing/walking limitation.

Therefore, the court finds that the ALJ provided specific and legitimate reasons for discounting Dr. Garfinkel's opinion.  To be sure, another ALJ could potentially have interpreted the evidence differently.  However, the court defers, as it must, to the ALJ's reasonable and rational resolution of any inconsistencies and ambiguities.

V.     CONCLUSION

For the foregoing reasons, the court finds that the ALJ's decision was free from prejudicial error and supported by substantial evidence in the record as a whole.  Accordingly, IT IS HEREBY ORDERED that:

---

[5] Curiously, upon initial questioning by the ALJ, plaintiff testified that the date she identified as her disability onset date had no significance.  (AT 38-39.)  Only after highly suggestive prompting by her attorney did plaintiff draw a connection between her alleged disability onset date and her prior cardiac surgery.  (AT 50-51.)

1.     Plaintiff's motion for summary judgment (ECF No. 15) is DENIED.

2.     The Commissioner's cross-motion for summary judgment (ECF No. 16) is GRANTED.

3.     Judgment is entered for the Commissioner.

4.     The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated: October 17, 2014

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE